UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB MCPHERSON, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br>  v.<br><br>GOOGLE, INC., ODESK CORPORATION, and ELANCE-ODESK, INC.<br><br>         Defendants. | Index No.<br><br>**FLSA COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

   Plaintiff Jacob McPherson, ("Plaintiff"), by and through counsel, on his own behalf and on behalf of all others similarly situated, alleges upon information and belief, except as to the allegations that pertain to Plaintiff which are alleged upon personal knowledge, as follows:

## INTRODUCTION

   1. This action arises out of the systematic failure of Google, Inc. ("Google") to properly classify and pay its workforce.

   2. Google is one of the largest and most profitable providers of software services. Despite its profitability, Google maintains policies and practices of misclassifying employees as independent contractors who are not covered by wage and hour laws, paying these employees through outside agencies, and not paying them for all hours worked.

   3. Plaintiff Jacob McPherson ("McPherson" or "Plaintiff") worked for Google for approximately one year. During that year Google misclassified Plaintiff as an independent contractor.

   4. Google limited the number of hours for which Plaintiff and others similarly situated could be paid. However, Google did not similarly limit the amount of work that it assigned to Plaintiff and others.

5. Although Plaintiff often worked as many as forty-five hours in a workweek, Google never paid him for more than thirty hours in a workweek. Furthermore Google never paid Plaintiff and others similarly situated overtime at one and one-half (1-1/2) times their regular rate for hours that they worked in excess of forty (40) in a workweek.

6. Defendants' unlawful practices, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and applicable regulations include but are not limited to, their failure to pay Plaintiff and others similarly situated wages due for work performed and overtime at not less than one and one-half (1-1/2) times the hourly rate for all hours worked in excess of forty (40) hours in a workweek.

7. On behalf of himself and others similarly situated, Plaintiff seeks unpaid wages, liquidated damages, pre-and post-judgment interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's Fair Labor Standard Act ("FLSA") claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367, in that they arise out of the same set of operative facts and are so related to Plaintiff's FLSA claims that they form part of the same case or controversy.

10. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district in that Plaintiff was employed to work in Google's offices located in New York County in the State of New York.

## PARTIES

11.     Plaintiff Jacob McPherson is an individual residing in Kings County in the State of New York. Plaintiff McPherson was hired by Google in January of 2013. His employment was terminated on December 31, 2013.

12.     During his employment with Google, Plaintiff McPherson worked in Google's New York offices with a primary address of 76 Ninth Avenue, 4th Floor, New York, New York 10011.

13.     Defendant Google, Inc. is a computer services provider incorporated under the laws of Delaware. Google's headquarters is located at 1600 Amphitheatre Pkwy, Mountain View, California 94043.

14.     In addition to its headquarters in Mountain View, Google maintains offices in countries throughout the world including the offices in New York County in the State of New York at which Plaintiff worked.

15.     Defendant oDesk Corporation ("oDesk") is incorporated under the laws of California. ODesk provides a web based platform which enables "freelancers" and employers to connect in real time. On its website oDesk proudly proclaims that it is the "the world's largest online workplace, where 1+ million companies hire freelancers to get the job done." *See* https://www.odesk.com/ (accessed Oct. 3, 2014).

16.     After offering him a position, Google told Plaintiff McPherson to register with oDesk. The offer and terms to accept would be extended through oDesk.

17.     Plaintiff was paid for his work at Google through oDesk.

18.     At the beginning of 2014, oDesk merged with Elance, Inc. ("Elance"), a Delaware corporation which also provided a platform for "freelancers" and businesses to connect.

19. Defendant Elance-oDesk, Inc. ("Elance-oDesk") is the corporation that was formed by the merger of oDesk and Elance. Elance-oDesk is incorporated under the laws of Delaware. Elance-oDesk's headquarters is located at 441 Logue Ave., Mountain View, California 94043.

## SUBSTANTIVE ALLEGATIONS

20. Plaintiff worked for Google as a Site Merchandiser in the Google Play unit for approximately one year. Plaintiff was paid on an hourly basis at the rate of $35 an hour.

21. At the end of 2012, Plaintiff reached out to Tim Quirk, a manager at Google, in order to obtain a job at Google. Mr. Quirk passed along Plaintiff's resume, which resulted in a phone call with Anne Bartholomew, who informally offered Plaintiff a position as a Site Merchandiser for Magazines in the Google Play unit.

22. Ms. Bartholomew informed Plaintiff that the pay would be $35 an hour and that he would be limited to fifteen hours per week at first.

23. Ms. Bartholomew also told Plaintiff that he would have to register at oDesk to receive the job offer. He would be considered a "freelancer" and would be paid through oDesk.

24. Plantiff followed Ms. Bartholomew's instructions and registered at oDesk. On January 9, 2013, Lauren Nemroff, Ms. Bartholomew's supervisor, extended a formal offer through oDesk confirming the terms that Ms. Bartholomew had offered to Plaintiff prior to his registration with oDesk.

25. As a condition of his work for Google, Defendants required Plaintiff to sign an Acknowledgement and Confidential Information Agreement for Vendor Employees Assigned to Google Inc. ("Agreement"). (*See* Acknowledgement and Confidential Information Agreement for Vendor Employees Assigned to Google Inc. attached hereto as Exhibit 1.) Paragraph 9 of the Agreement required Plaintiff and others similarly situated to "diligently adhere to" the same Code of Conduct that Defendant Google's employees and Board Members follow.

4

26. In addition, Paragraph 9 required Plaintiff to "diligently adhere to" the Google Vendor/Contractor Code of Conduct ("Code of Conduct"), which was attached to the Agreement as Exhibit B. The Code of Conduct covers "Appropriate Attire" and "Google's Blogging Policy" among other topics.

27. Google warns its "vendors" and "contractors," including Plaintiff, in the Code of Conduct that "refusal of a work assignment" and "excessive absenteeism" can result in the "immediate end of [their] assignment or services" at Google. (*See* Exh. 1, at 5).

28. Google also requires "vendors and contractors on assignment at Google [including Plaintiff], their immediate family members, and partners" to obtain Google management approval for AdSense or competing product accounts and for AdWords accounts, thus controlling and limiting the potential business opportunities of Plaintiff and others similarly situated.

29. Plaintiff started work for Google on January 28, 2014, and began training on Google's proprietary software tools and platforms.

30. Plaintiff was given a seat assignment at Google's Chelsea Market offices located at 75 Ninth Avenue, New York, NY 10011. The Chelsea Market offices are part of Google's New York Offices with a primary address of 76 Ninth Avenue, 4th Floor, New York, New York 10011. He also received a cell phone, tablet, and laptop computer.

31. Plaintiff's email signature identified him as "Books + Magazines Merchandising, Google Play" and gave his office address as 76 Ninth Avenue, 4th Floor, New York, New York 10011.

32. Plaintiff and others similarly situated worked in Google's offices and used Google's equipment to perform the same work as Google's full-time W-2 employees.

33. Plaintiff and others similarly situated were assigned to teams which included full-time W-2 employees of Google. They regularly attended mandatory team meetings and trainings and worked on assignments with the other team members.

34. Google constantly trained Plaintiff and others similarly situated on the Google proprietary computer platforms and tools. Plaintiff and others similarly situated could not use any of their own computer applications to perform their assignments, as they weren't relevant to the job. Only Google proprietary software was usable.

35. Moreover Google required Plaintiff and others similarly situated to attend numerous trainings on the Google approved method of performing their work assignments. Google required Plaintiff and others similarly situated to perform their work assignments using these approved methods.

36. When Plaintiff first started working for Google he was restricted to billing Google for fifteen hours per week. This maximum increased to twenty, then twenty-five, and finally in April of 2013 to thirty hours per week—the maximum for the remainder of Plaintiff's employment with Google. Plaintiff was not able to bill for more hours than the maximum even when he worked more hours.

37. When Plaintiff would attempt to bill for more than the maximum allowed hours Google would not pay for the additional hours. For example, in August of 2013, Plaintiff attempted to bill for thirty-three hours, but Defendants did not allow—and did not pay for—the additional three hours.

38. Although Plaintiff brought these unpaid hours to the attention of his manager, Anne Bartholomew, he was never paid for these hours.

39. Plaintiff and others similarly situated were often forced to work more than the maximum allowed hours in order to complete the tasks assigned to them by Google and keep their job.

40. Despite Defendants' prohibition on billing for additional hours, in order to complete their assigned tasks and keep their jobs, Plaintiff and others similarly situated often worked more than forty (40) hours in a given work week for Defendants' benefit.

41. Defendants never paid Plaintiff and others similarly situated overtime at the rate of one and one-half times their regular hourly rate for the hours that they worked in excess of forty (40) in a workweek.  Plaintiff worked forty-five hours or more during more than half of the weeks that he worked for Defendants.  Not only did Defendants <u>not</u> pay Plaintiff overtime for these hours, Defendants did <u>not</u> pay Plaintiff anything at all for these hours worked in excess of forty (40) in a workweek.

42. Google had a practice of requiring Plaintiff and others similarly situated to decrease the time spent on repeated tasks on a weekly basis.  When Google's requirement became impossible and the time spent on these tasks could not be decreased, Plaintiff and others similarly situated were forced to complete the tasks on their own time.  Defendants did not pay Plaintiff and others similarly situated for these hours spent working for Defendants' benefit.

43. Around June or July of 2013 Plaintiff asked his manager, Ms. Bartholomew, about increasing the maximum number of hours for which he would be paid.  Plaintiff explained that he was being assigned more work and it was not possible to complete all his assigned tasks within his allotted time cap.  This conversation continued during the summer of 2013.

44. During the same time period, Ms. Bartholomew spoke with Plaintiff about the requirement that he increase work output and efficiency and complete his assigned tasks within the allotted time cap.

45. Ms. Bartholomew informed Plaintiff of this requirement without concern about or an assessment of whether it was possible to complete these tasks within the allotted time cap.

46. Ms. Bartholomew told Plaintiff that all tasks must be completed without regard to the time. Not completing tasks would result in Google finding a replacement contractor and Plaintiff's employment would be terminated.

47. In fact Google did find a replacement contractor and terminated Plaintiff's employment.

48. In October of 2013, Plaintiff learned that Google Play was "in talks" with another contractor regarding employment in Plaintiff's role at Google Play through an email that he received from Dave Lucas, a friend who worked for Google in the Google+ division. In the email Mr. Lucas asked Plaintiff if he had any "insight" for the other contractor.

49. Then, at the end of November 2013, Plaintiff was informed by Ms. Bartholomew that his contract would be terminated and his employment would end on December 31, 2013.

50. Shortly thereafter, on December 5, 2013, Plaintiff learned that his replacement had been hired when he received a message from the woman who had been hired to fill his role, starting at the beginning of February 2014.

51. In January of 2014, after Google terminated his employment, Plaintiff applied for Unemployment Insurance Benefits ("UIB"). Although Defendants disputed Plaintiff's eligibility based on their claim that he was an independent contractor, the New York State Department of Labor ultimately determined that Plaintiff was an employee for the purposes of unemployment insurance and Plaintiff received UIB.

52. Defendants' actions, as alleged herein, were intentional and not made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff brings the First Cause of Action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and others similarly situated (the "FLSA Collective Action Members"), which shall include:

All persons who work or worked for Google and (1) received badges to be admitted to Google's offices and were expected to work in Google's offices; (2) were paid on an hourly basis; (3) were paid by oDesk and/or Elance-oDesk; and (4) were paid as 1099 contract workers at any time beginning three years prior to the filing of the original Complaint in this case through the date the Court orders notice to be sent in accordance with Section 216(b) of the FLSA (the "FLSA Collective Period").

54. At all relevant times, Plaintiff and the FLSA Collective Action Members have had substantially similar job requirements, job duties, and pay provisions, and are and have been subject to Defendants' decisions, policies, plans, practices, procedures, routines, and rules to willfully fail and refuse to pay them overtime at the rate of one and one-half times their regularly hourly rate for all hours worked in excess of forty in a workweek.

55. The claims of Plaintiff are essentially the same as those of the other FLSA Collective Action Members.

56. Other FLSA Collective Action Members currently or formerly employed by Defendants should have the opportunity to have their claims for violations of the FLSA heard. Certifying this action as a collective action under the FLSA will provide the FLSA Collective Action Members with notice of the action and allow them to opt in to such an action if they so choose.

57. The First Cause of Action is properly brought under, and maintained as an opt-in collective action pursuant to, §216(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Action Members are readily ascertainable. For purpose of notice and other purposes related to this action, their names and contact information are readily available on records that Defendants are legally required to maintain.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

59. During the FLSA Collective Period, Plaintiff and others similarly situated were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. §203(e) and (g).

60. During the FLSA Collective Period, Plaintiff and others similarly situated were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), 206, and 207.

61. During the FLSA Collective Period, Defendants have been, and continue to be, "employers" and/or joint employers engaged in interstate "commerce" and/or the production or sale of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

62. During the FLSA Collective Period, Defendants' businesses have had annual gross revenues well in excess of $500,000.

63. Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. §216(b). Plaintiff's written consent is attached hereto as Exhibit 2 and incorporated by reference herein.

64. Defendants were required to properly pay Plaintiff and others similarly situated overtime wages at the rate of one and one-half times their regular hourly rate for all hours worked in excess of forty (40) hours in a workweek.

65. During the FLSA Collective Period, Defendants violated the FLSA by developing a standard business practice of misclassifying Plaintiff and the FLSA Collective Action Members as independent contractors and thereby attempting to avoid the overtime requirements of the FLSA.

66. Furthermore Defendants had a standard business practice of limiting the number of hours for which they would pay Plaintiff and the FLSA Collective Action Members while assigning more work to Plaintiff and the FLSA Collective Action Members than could be completed in the allotted time.

Google then blamed Plaintiff and the FLSA Collective Action Members for not being more efficient when they were unable to complete their assigned work in the allotted time. Plaintiff and the FLSA Collective Action Members understood that they would be replaced and their employment terminated if they did not complete all the assigned work.

67. Defendants have willfully and intentionally engaged in a widespread pattern and practice of violating provisions of the FLSA by failing to pay Plaintiff and others similarly situated for all hours worked and failing to pay Plaintiff and others similarly situated overtime at not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and (e) and § 215(a).

68. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255(a).

69. As a result of Defendants' violations of the FLSA, Plaintiff and others similarly situated have suffered damages by being denied pay for all of their hours worked and by being denied overtime wages in amounts to be determined at trial and are entitled to recovery of such amounts, an equal additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and punitive damages pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Labor Law, Article 19: Unpaid Wages and Overtime Wages

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

71. During his employment with Defendants, Plaintiff was an "employee" within the meaning of N.Y. Lab. Law § 190(2), and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14.

72. During Plaintiff's employment with Defendants, Defendants were employers within the meaning of N.Y. Lab. Law § 650(6).

73. Defendants failed to pay Plaintiff overtime wages of not less than one and one-half times his regularly hour rate for each hour worked in excess of forty hours in a workweek in violation of the N.Y. Lab. Law, Article 19, §650, *et seq.*, and N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.2. Moreover, Defendants failed to pay Plaintiff for each hour that he worked.

74. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants all of the wages due him for hours worked at his regular rate of pay and unpaid overtime wages of not less than one and one-half times his regular hourly rate for each hour worked in excess of forty (40) hours in a workweek, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law §§ 195(1) & (3)**
**Failure to Include All Required Information on Wage Statements and Wage Notice**

75. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

76. Defendants have willfully failed to supply Plaintiff with the notices required by NYLL § 195(1) containing Plaintiff's rate or rates of pay and bases thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone

number of the employer; plus such other information as the commissioner deems material and necessary.

77. Defendants have also willfully failed to supply Plaintiff with an accurate statement of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

78. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants $100 for each workweek that the violations § 195(3) occurred or a maximum of $2,500, as provided for by NYLL § 198(1)-d, and $50 dollars for each workweek that the violations of § 195(1) occurred or a maximum of $2,500, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### NYLL § 215:  Unlawful Retaliation

79. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

80. As detailed above, Defendants retaliated against Plaintiff— in violation of NYLL § 215—by terminating his employment after Plaintiff made a complaint to his manager about not being paid for all the hours that he worked.

81. Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

82. Contemporaneously with the filing of this lawsuit, Plaintiff served notice of the original Complaint in this proceeding upon the Attorney General of the State of New York.

83. Due to Defendants' illegal retaliation Plaintiff is entitled to all appropriate relief including injunctive relief, lost compensation, reinstatement or front pay in lieu thereof, statutory liquidated damages of $10,000, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs prays for relief as follows:

(a) Designation of this action as a collective action on behalf of the FLSA Collective Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b) Designation of Plaintiff as Representative of the FLSA Collective Action Members;

(c) An award of damages, according to proof, to Plaintiff and the FLSA Collective Action Members including FLSA liquidated damages, and interest, to be paid by Defendants;

(d) An award of damages to Plaintiff for violations of the NYLL, including statutory NYLL liquidated damages;

(e) Payment of lost wages to Plaintiff and reinstatement of Plaintiff, or front pay to Plaintiff in lieu thereof, and liquidated damages, for violations of NYLL § 215.

(f) Costs of action incurred herein, including expert fees;

(g) Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 663, 198 and other applicable statutes;

(h) Pre-Judgment and post-judgment interest, as provided by law; and

(i) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the FLSA Collective Action Members demands a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: November 7, 2014  Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES

_____/s/ David Harrison_____
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
(718) 799-9111 Phone
(718) 799-9171 Fax
nycotlaw@gmail.com
*Attorneys for Plaintiff & the Proposed FLSA Collective Plaintiffs*